UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

INGRIS CORONADO,

                           Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-189 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On December 11, 2020, Defendant Ingris Coronado ("Defendant") pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 6 months of incarceration and 6 months of supervised release with special conditions, including home detention. The Court also orders Defendant to pay restitution in the amount of $52,922.37 and a $100.00 special assessment.

## BACKGROUND

On September 23, 2020, the United States ("Government") filed a Complaint alleging Defendant defrauded her employer, the Southern Queens Park Association ("SQPA"), a not-for-profit organization operating in Queens, New York, by writing fraudulent checks in the name of individuals or vendors employed by the SQPA that Defendant then deposited into her personal bank account. Compl. ¶¶ 4-6, 14, 21, 25-28, ECF No. 1. On December 11, 2021, the Government filed a one-count Information charging Defendant with wire fraud in violation of 18 U.S.C. § 1343. Information ¶ 1, ECF No. 13. That same day, Defendant pled guilty to the sole count of the Information. *See* Minute Entry for Proceedings, ECF No. 15; *see also* Plea Agreement ¶ 1, ECF No. 12.

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The

"starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Nature and Characteristics of the Offense

In 2020, federal authorities began to investigate Defendant in connection with wire fraud and the use of fake checks that she wrote and endorsed in the name of individuals or vendors employed by the SPQA. Compl. ¶¶ 4-6, 14, 21, 25-28, ECF No. 1. In sum, investigators identified dozens of forged checks with a total of approximately $52,922.37 that were

misappropriated by Defendant. Presentence Investigation Report ("PSR") ¶¶ 13, 18, 21-21, 25, 30, 32, 34, ECF No. 19.

That same month, Government investigators interviewed Defendant, during which they showed her copies of a forged employee check and a forged vendor check that had been deposited into her bank account. PSR ¶¶ 37-38. Regarding the forged employee check, Defendant stated she deposited the check into the employee's account or her personal account, in which case she then paid the employee in cash. *Id.* ¶ 38. Defendant also claimed the vendor check had been deposited into her account due to an error and claimed she reimbursed the SPQA in cash. *Id.* After the investigators advised Defendant that lying to federal authorities is a crime, Defendant admitted that she kept the money from the forged checks for herself. *Id.* ¶ 39.

2. Family and Personal Background

Defendant was born on February 10, 1974 in San Cristobal, Dominican Republic. *Id.* ¶ 61. Defendant is one of two children born to Euclides Coronado Rodriguez and Santa Matilda Ramon Munoz de Coronado. *Id.* Defendant's father, now aged 76, is a retired factory employee. *Id.* Her mother, now aged 67, is a retired cosmetic factory employee. *Id.* Defendant's parents are aware of her conviction and remain supportive of her. *Id.*

Defendant also has one brother, Nervin Coronado, aged 44, who was deported from the United States to the Dominican Republic on July 19, 2019 after being convicted of an unrelated crime. *Id.* ¶ 62. Defendant's sister-in-law, Barbara Armas, was a co-defendant in this federal offense and sentenced by the Honorable Allyne R. Ross to 15 months custody and 3 years of supervised release. *Id.* Defendant's brother is aware of Defendant's conviction and remains supportive of her. *Id.*

Defendant was raised in an intact upper-middle income household in San Cristobal before

immigrating to the United States in June 1989. *Id.* ¶ 63. Defendant reports her childhood was "beautiful" and states she was raised in a loving home free from abuse. *Id.*

On July 3, 1993, Defendant married Victor Bonilla. *Id.* ¶ 65. The two had one child—Arlene Evette Bonilla, now aged 25, who works as a counselor in a residential home for children with mental health issues—before divorcing in 2005. *Id.* ¶¶ 65-66. Defendant's daughter describes her as a kind-hearted, outgoing, and supportive mother that goes above and beyond to assist her community. *Id.* ¶ 66. Defendant maintains limited contact with her former husband and states she does not know if he is aware of her arrest and conviction. *Id.* ¶ 65.

Aside from the instant offense and conviction, Defendant does not have any prior criminal history. *Id.* ¶¶ 54-59.

3. <u>Educational and Employment History</u>

From 1989 to 1991, Defendant attended and later graduated from the William Howard Taft High School in New York City. *See id.* ¶ 77. She describes herself as an above-average student with no disciplinary problems. *Id.* ¶ 78. During high school, Defendant worked as a tutor, and later as a sales associate at North Pole in Queens. *Id.* ¶ 83. After graduating, Defendant attended the City College of New York, during which she worked as an assistant manager of an auto parts store in the Bronx. *Id.* Defendant eventually graduated with a bachelor's degree in psychology in 1996.

Defendant worked as an assistant manager at Pep Boys Parts USA from 1996 to 1998. *Id.* ¶¶ 76, 83. From 1998 to 2006, Defendant worked as the director of an after-school program at Good Shepherd Services in the Bronx. *Id.* From 1998 to 2000, Defendant also worked as a family worker at Sanctuary for Families. *Id.* From 2006 to 2011, Defendant was employed as a program director at SEAM New York but reports being laid off once funding ended for her

4

position. *Id.* Defendant then worked as a program director at Believe Southside Charter High School in Brooklyn, New York from 2011 to 2012, before it closed for undisclosed reasons. *Id.*

From August 1, 2012 to November 9, 2020, Defendant was employed by the SQPA, a non-profit organization devoted to the care and advancement of youth in Jamaica, New York. *Id.* ¶ 82. The SQPA receives most of its funding from New York City government agencies. *Id.* ¶ 3. After her arrest in November 2020, Defendant was briefly unemployed. *Id.* ¶ 80. From November 22, 2020 to the present, she has been working as a part-time customer service advisor at Pep Boys – Manny, Moe & Jack of Delaware. *Id.* Defendant also works as a community ambassador at Community Health Action of Staten Island. *Id.* ¶ 79.

### 4. Medical and Mental Health

Defendant reports suffering from high blood pressure, arthritis in her right hand, and joint pain, for which she is prescribed medication. *Id.* ¶¶ 70, 72. She reported having gastric bypass surgery in 2017, after which she lost 65 pounds. *Id.* ¶ 71. As a result of this surgery, Defendant alleges she gets dehydrated easily and must maintain a diet which contains at least 50 grams of protein a day. *Id.* Defendant states she drinks socially but does not use illicit substances. *Id.* ¶ 75. She also reported feeling mentally healthy prior to her instant arrest and conviction but has since considered seeking mental health because she has been feeling depressed. *Id.* ¶ 74.

In addition, Defendant's daughter reports Defendant has undergone medical procedures to preserve her egg cells because of ovarian cancer. *Id.* ¶ 73.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

5

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, including her repeated embezzlement of public resources for her personal gain over a period of several years. The Court's sentencing will deter others from engaging in similar acts and justly punishes Defendant for her offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. For this offense, Defendant faces a statutory maximum term of imprisonment of 20 years, a term of supervised release of not more than 3 years, a term of probation of not less than one nor more than 5 years, a maximum fine of $250,000.00, and a mandatory special assessment of $100.00. 18 U.S.C. § 1326(b)(2); 18 U.S.C. §§ 3583(b)(2), 3561(c)(1), 3571(b). Defendant is also required to pay restitution under 18 U.S.C. § 3663A which, under the terms of her plea agreement, is owed to the SQPA in the amount of $52,922.37.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable Guideline for a violation of 18 U.S.C. § 1343 is USSG § 2B1.1. The base offense level for this violation is 7 since the Defendant was convicted of an offense referenced in

this Guideline, which has a statutory maximum term of imprisonment of 20 years or more. USSG § 2B1.1(a). Since the loss exceeded $40,000.00, a 6-level enhancement is warranted per USSG § 2B1.1(b)(1)(D). Because Defendant abused a position of public trust, the offense level is increased by 2 levels. USSG § 3B1.3. However, because Defendant has demonstrated acceptance of responsibility for the offense by pleading guilty, the offense level is decreased by 2 levels, resulting a total offense level of 13. USSG § 3E1.1(a).

The parties agree Defendant's criminal history category is I. For an offense level of 13 and a criminal history category of I, the Sentencing Guidelines suggest a term of imprisonment of 12 to 18 months. *See* USSG Ch. 5, Pt. A. As an alternative, pursuant to USSG § 5C1.1(d)(2), the Court may impose a term of imprisonment of 6 months followed by a term of supervised release with a special condition requiring 6 months community confinement or home detention.

Defense counsel requests a sentence of 5 years of probation, 100 hours of community service, and $52,922.37 in restitution. Def. Mem. at 1, ECF No. 28. Defense counsel urges the Court to consider Defendant's lack of criminal history record, her history of community service, the social and professional consequences Defendant has suffered because of her crimes, and her prompt acceptance of responsibility for her actions. *Id.* at 2-4. Defense counsel also alleges Defendant committed her crimes not for personal gain, but in a "misguided" attempt to assist others. Def. Ltr. at 2, ECF No. 30. In the alternative, if the Court determines a sentence of incarceration is necessary, defense counsel asks the Court to consider home confinement. Def. Mem. at 1.

The Government urges the Court to impose a sentence within the Guidelines imprisonment range of 12 to 18 months and $52,922.37 in restitution. Gov. Mem. at 1. In support of this sentence, the Government argues Defendant's crime was planned, deliberate, and

7

took place over a period of several years during which Defendant held a position of power and public trust, and used this power to defraud others, including those close to her. *Id.* at 5. The Government also argues that this sentence is necessary to deter similar fraudulent conduct, which is often difficult to detect and prosecute. *Id.*

Probation requests a sentence of 12 months incarceration, payment of $52,922.37 in restitution to the SQPA, 1 year of supervised release with special conditions (including compliance with the restitution order and full disclosure of financial records), and payment of a $100.00 special assessment. Probation Mem. at 1, ECF No. 19-1. Probation argues that this sentence is appropriate because Defendant's crime of fraud harmed an organization devoted to the betterment of the community and created additional potential victims from her use of personal information in committing the crime. *Id.* Probation also states that, based on Defendant's financial profile, she appears unable to pay a fine. *Id.* at 2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant here.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Court is mindful that Barbara Armas, Defendant's sister-in-law, was a co-defendant in this federal offense and sentenced to 15 months custody and 3 years of supervised release by the Honorable Allynne R. Ross. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the

Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Here, as a result of her embezzlement of public funds, Defendant caused a loss of at least $52,922.37 to the SQPA, which may have otherwise been used in furtherance of the SQPA's goal of helping the community. The Court's sentence will account for this loss, as well as the need to provide restitution, to the victims of Defendant's crimes.

## CONCLUSION

The Court finds that a sentence of 6 months of incarceration, 6 months of supervised release with special conditions (including home detention, compliance with the restitution order, and full disclosure of Defendant's financial records), restitution in the amount of $52,922.37, and a $100.00 special assessment is consistent with and is sufficient but no greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

SO ORDERED.

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2022
Brooklyn, New York

9